IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN PEREZ,<br>        Plaintiff,<br><br>        v.<br><br>OFFICER JOSE LEBRON, *et al.,*<br>        Defendants. | :<br>:<br>:<br>:   Civil No. 5:20-cv-04331-JMG<br>:<br>:<br>: |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                                                      **June 3, 2021**

      Plaintiff John Perez filed this complaint against the City of Allentown, Allentown Mayor Ray O'Connell, former Chief of the Allentown Police Department Tony Alsleben, eight named Allentown police officers, and ten "Doe" defendants pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and Pennsylvania state law. His claims arise out of a violent encounter with police officers in September 2018. Before the Court is defendants' partial motion to dismiss and motion to strike. For the reasons explained below, the motion will be granted in part and denied in part.

**I.**     **BACKGROUND**[1]

      During the early hours of September 8, 2018, a commotion erupted outside the home of Plaintiff John Perez. Compl. ¶¶ 17–19, ECF No. 1 [hereinafter "Compl."]. Several Allentown police officers had responded to the area, a predominantly Latino community, after receiving reports of an armed man nearby. *Id.*; *see also id.* ¶ 22. In their search for the suspect, the officers began opening private garages in the alleyway behind Perez's home. *Id.* ¶ 20.

---

[1]     This summary is premised on the factual allegations contained in the complaint. For purposes of this motion, the allegations are presumed to be true and are construed in the light most favorable to Perez.

Tensions quickly escalated as Perez's neighbors questioned the officers about their conduct. *Id.* ¶ 21. The officers responded by mocking the residents, calling them "babies," "bitches," "4th Street pussies," and "Corn Street pussies." *Id.* ¶¶ 21, 25. An officer even threatened to return at a later date, cautioning the crowd that "you don't want me back." *Id.* ¶ 22.

Perez stepped outside to investigate and was greeted with obscenities and derogatory language from one of the officers. *Id.* ¶ 25. The officer taunted Perez, who is of Dominican heritage, by saying, "you're a buck five [105 pounds] soaking wet. Get the fuck out of here. Go back to where the fuck you came from." *Id.* ¶ 27. Perez calmly responded but was directed to "mind [his] fucking business." *Id.* ¶ 30. The officer then forced Perez to the ground. *Id.* ¶ 32. He struck Perez repeatedly, leaving Perez with a broken nose and dislocated arm. *Id.* ¶¶ 33–35, 51. None of the other officers intervened as the first officer repeatedly struck Perez. *Id.* ¶¶ 36, 42. Perez's neighbors pleaded with the officers to stop the assault, to no avail. *Id.* ¶ 41.

Dazed and injured, Perez was taken into custody and charged with resisting arrest and disorderly conduct. *Id.* ¶ 46. A jury ultimately acquitted Perez of all charges. *Id.* ¶ 81.

## II.  STANDARD

A complaint may be dismissed for failing to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive dismissal, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). To that end, a complaint cannot rely on mere "labels and conclusions, and a formulaic

recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545.

A three-step framework governs our review of a complaint. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, we identify "the elements [the] plaintiff must plead to state a claim." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 675). Second, we "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, we assume the veracity of well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

At the motion to dismiss stage, we "accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)).

## III. DISCUSSION

The defendants move to dismiss two of Perez's racial discrimination claims, his Fourteenth Amendment Due Process claim, and his claim for equitable relief under the Pennsylvania Constitution. We address these claims in turn before considering defendants' request to strike certain portions of the complaint.

### A. Racial Discrimination

In Count VI, Perez raises a race-based Equal Protection Clause claim against all defendants under 42 U.S.C. § 1983. Compl. ¶¶ 180–92. Perez alleges that he "was intentionally discriminated against by the Defendants due to his Hispanic roots." *Id.* ¶ 187. He further alleges that he "was treated differently than similarly situated white persons." *Id.* ¶ 182.

3

Section 1983 offers a cause of action for plaintiffs who have suffered "a deprivation of a constitutional right . . . [that] was caused by a person acting under the color of state law." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (internal citation omitted). At issue here are the rights guaranteed by the Equal Protection Clause. U.S. CONST. amend. XIV, § 1 ("No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."). "To bring a claim under § 1983 for the denial of equal protection based on race, a plaintiff must show: (1) he is in a protected class; (2) the defendant acted under the color of state law; and (3) the defendant treated the plaintiff differently because of his race, or, put differently, acted with a racially discriminatory intent or purpose." *Johnson v. Fuentes*, 704 F. App'x 61, 65 (3d Cir. 2017) (internal citations omitted).[2]

Perez pleads a plausible Equal Protection claim. It is undisputed that Perez is a member of a protected class and that the defendants are state actors who acted under color of state law. *See, e.g.*, Compl. ¶ 201. Perez has also satisfactorily alleged that the defendants acted with a racially discriminatory intent or purpose. Not only does he allege that he "was treated differently than similarly situated white persons," *id.* ¶ 182, but he also asserts that he was told to "[g]o back to where the fuck [he] came from" shortly before the defendant officers assaulted him. *Id.* ¶ 27. Viewed in the light most favorable to Perez, we find that these allegations sufficiently state an

---

[2] Defendants instead argue that Perez alleged a "class of one" Equal Protection claim. Defs.' Mot. 7–8, ECF No. 14. The Supreme Court has explained that "single individuals or entities *who are not alleged to be members of a protected class* can bring an equal protection claim under a theory of 'class of one.'" *Toth v. Borough of Ambridge, Pa.*, No. 06-cv-1696, 2007 WL 776102, at *2 (W.D. Pa. Mar. 9, 2007) (emphasis added) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Perez, a Hispanic male, is a member of a protected class, so we need not examine his claims under the "class of one" rubric. *See Reyes v. City of Trenton*, No. 05-1882, 2007 WL 1038482, at *9 (D.N.J. Mar. 30, 2007) ("Plaintiffs here are Hispanic, and thus, are members of a protected class."); *Frompovicz v. Hissner*, 434 F. Supp. 3d 269, 281 (E.D. Pa. 2020) ("To establish an equal protection violation, a plaintiff must demonstrate that he is *either* a member of a protected class *or* a 'class of one[]' . . . ." (emphasis added)).

4

Equal Protection claim based on Perez's membership in a protected class. *See, e.g., Suber v. Guinta*, 902 F. Supp. 2d 591, 607 (E.D. Pa. 2012) ("[A] general allegation that plaintiff has been treated differently from others similarly situated will suffice." (internal citation omitted)); *Stockley v. Darby Borough*, No. 10-688, 2011 WL 665800, at *3 (E.D. Pa. Feb. 23, 2011) (denying motion to dismiss Equal Protection claim where defendant police officer "made arguably racist remarks regarding [plaintiff]" and complaint alleged facts suggesting that "racism was pervasive at the [relevant police department]").

Perez also asserts a Civil Rights Act claim against all defendants under 42 U.S.C. § 1981. Compl. ¶¶ 193–208. He alleges that he was deprived "of rights protected by the Constitution of the United States of America, and the Defendants intended to deny [him] rights enjoyed by white citizens of the United States." *Id.* ¶ 194.

"To establish a right to relief under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in' § 1981, including the right to make and enforce contracts." *Pryor v. NCAA*, 288 F.3d 548, 569 (3d Cir. 2002) (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)). Section 1981 is not limited to contractual rights alone. *Mahone v. Waddle*, 564 F.2d 1018, 1028 (3d Cir. 1977). Rather, the Third Circuit has interpreted the statute to cover "the type of racially motivated physical abuse and misuse of governmental power which is alleged in this instance." *Id.* at 1029 (internal citation omitted).

The problem, though, is that Section 1981 creates rights—not remedies. *McGovern v. City of Phila.*, 554 F.3d 114, 116 (3d Cir. 2009) ("[W]hile § 1981 creates *rights*, § 1983 provides the *remedy* to enforce those rights against state actors."). Perez recognizes as much. *See* Compl. ¶ 198 ("Section 1981 provides extensive equal protection rights, but is properly brought pursuant to

5

Section 1983, which provides the remedy for violations of Section 1981 . . . ."). "[B]ecause a private cause of action cannot be asserted against a municipal [actor] for a violation of § 1981," Perez's Section 1981 claim must be dismissed.³ *Lande v. City of Bethlehem*, 457 F. App'x 188, 193 (3d Cir. 2012); *see McGovern*, 554 F.3d at 121 ("[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989))); *see also A.J. v. Lancaster Cnty.*, No. 5:19-cv-01768, 2019 WL 5102156, at *3 (E.D. Pa. Oct. 11, 2019) (dismissing Section 1981 claims that should have been brought under Section 1983).

### B. Due Process

In Count X, pursuant to Section 1983, Perez raises a Fourteenth Amendment Due Process Claim against the eight named Allentown police officers and ten "Doe" defendants. Compl. ¶¶ 237–51. Perez alleges that these officers "deliberately fabricated and suppressed evidence" that "was used as a basis for the filing of criminal charges" against him. *Id.* ¶¶ 238, 242.

Defendants argue that this claim violates the more-specific-provision rule. *See United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). Because this claim implicates Perez's arrest and detention, the argument goes, we must

---

³ This claim is dismissed with prejudice. *See Centifanti v. Nix*, 865 F.2d 1422, 1431 (3d Cir. 1989) ("[T]he district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." (internal citation omitted)). In any event, Perez's Section 1981 claim overlaps with his Section 1983 claims.

6

evaluate it under the Fourth, and not the Fourteenth, Amendment. *See* Defs.' Mot. 9–10, ECF No. 14.

Defendants are mistaken. The more-specific-provision rule is of no moment, as the Third Circuit recognizes "that an acquitted criminal defendant," like Perez, "may have a stand-alone fabricated evidence claim against state actors under the *due process clause of the Fourteenth Amendment* if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." *Black v. Montgomery Cnty.*, 835 F.3d 358, 371 (3d Cir. 2016) (emphasis added). That is precisely what Perez has alleged here. Perez plausibly alleges that the defendants "swore out and filed a knowingly false, fabricated, and misleading Affidavit of Probable Cause, Criminal Complaint and Offense Report," prompting criminal charges from which he was later acquitted. Compl. ¶ 239; *see also id.* ¶ 242 ("The aforesaid fabricated evidence was used as a basis for the filing of criminal charges . . . ."). Accordingly, Perez can proceed with his Fourteenth Amendment claim.[4] *See, e.g.*, *Kessler v. Borough of Frackville*, No. 3:17-cv-2231, 2018 WL 2113648, at *5 (M.D. Pa. May 8, 2018) (denying motion to dismiss Fourteenth Amendment fabrication of evidence claim where plaintiff alleged "that he was criminally charged as a result of a fabricated story by Defendants"); *Grubbs v. Miller*, No. 17-555, 2018 WL 446520,

---

[4] Defendants also call for dismissal because "Plaintiff has not established any facts that absent the alleged fabricated evidence, Plaintiff would not have been charged." Defs.' Mot. 11, ECF No. 14. Defendants appear to be making a merits argument. *See also id.* ("Plaintiff has not set forth any evidence . . . ."). Such an argument is inappropriate at the motion to dismiss stage. "At this juncture, [Perez] does not need *to prove* that [defendants] fabricated evidence or *to prove* causation under the 'meaningful connection' standard. Rather, [Perez] must set forth well-pled factual allegations sufficient to show a plausible claim for relief." *Brackbill v. Ruff*, No. 1:17-cv-1046, 2018 WL 2322014, at *7 (M.D. Pa. May 22, 2018) (emphasis added); *see also Black*, 835 F.3d at 372 (to ultimately succeed on a Fourteenth Amendment fabrication of evidence claim, a plaintiff must "draw a meaningful connection between her particular due process injury and the use of fabricated evidence against her" (internal quotation marks and citation omitted)). Perez has cleared that hurdle.

at *5 (M.D. Pa. Jan. 16, 2018) (denying motion to dismiss Fourteenth Amendment fabrication of evidence claim "given Plaintiff's straightforward allegation that her arrest was predicated upon a fabricated story of harassment and intimidation").

### C. Pennsylvania Constitution

In Count XIV, pursuant to the Pennsylvania Constitution, Perez requests equitable relief against the eight named Allentown police officers and ten "Doe" defendants. Compl. ¶¶ 296–300. Defendants seek dismissal of this claim because "it is well-settled that there is no legally cognizable cause of action for a violation of the Pennsylvania State Constitution." Defs.' Mot. 12, ECF No. 14. That is true, but only to the extent that a plaintiff seeks *damages*. *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." (internal citation omitted)). "[E]quitable remedies are available" under the Pennsylvania Constitution, and that is all Perez requests. *Id.* at 688; *see also Moeller v. Bradford Cnty.*, 444 F. Supp. 2d 316, 320 (M.D. Pa. 2006) ("[I]t is well settled that individual plaintiffs may bring suit for injunctive relief under the Pennsylvania Constitution."). Therefore, we will not dismiss Count XIV.

### D. Motion to Strike

Defendants also request that we strike certain portions of the complaint. Courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). For purposes of Rule 12(f), "immaterial matter" is "that which has no essential or important relationship to [any] claim[s] for relief," while "scandalous matter is that which casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." *Roamingwood Sewer & Water Ass'n v. Nat'l Diversified Sales, Inc.*, --- F. Supp. 3d

----, 2020 WL 7488876, at *3 (M.D. Pa. Dec. 21, 2020) (internal quotation marks and citations omitted). "[S]triking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice and should be used sparingly." *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (internal quotation marks and citation omitted).

Defendants first argue that paragraph 60 of the complaint "is a blatantly scandalous and impertinent statement." Defs.' Mot. 16, ECF No. 14. We disagree. For reference, the paragraph states:

> Defendant Officer Lebron, in particular, has had a prior civil rights case brought against him for the excessive use of force on a minority member of the community, and has a well-deserved reputation for the unnecessary, unreasonable and excessive use of force.

Compl. ¶ 60. The inclusion of "well-deserved" might be objectionable, but it does not rise to the level of "cruelly derogatory" language that should be stricken. *See, e.g.*, *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 649 (E.D. Pa. 2014) (striking description of defendants as "lying and corrupt police officers" who were "motivated by their greed . . . and racist desires" because it cast them "in a cruelly derogatory light" (internal quotation marks omitted)). Moreover, the allegation bears a reasonable relation to Perez's claims, as "[e]vidence of prior incidents involving . . . police officers . . . as well as the response of supervisory personnel to those involved in such events is relevant to establishing *Monell* liability." *Moore v. Vangelo*, No. 03-cv-4718, 2004 WL 292482, at *6 (E.D. Pa. Feb. 12, 2004) (denying motion to strike references to a defendant officer's involvement "in a past excessive force case").

Defendants next ask that we strike ten paragraphs "discussing what occurred after the criminal trial in this matter." Defs.' Mot. 16, ECF No. 14. They similarly seek to strike Exhibit A to the complaint, a transcript that recounts the defendant officers' allegedly unruly conduct during Perez's criminal trial. *Id.* Defendants argue that "what occurred following the criminal

9

trial [is] irrelevant to the claims at issue," *id.*, but post-incident conduct "may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force." *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996). Given the relevance of post-incident conduct in Section 1983 cases, we will not strike this material from the complaint.

Defendants finally ask that we strike "averments that the City [of Allentown] does not undertake psychological testing, drug testing, steroid testing, alcohol abuse testing, mental health testing including anger management issues and implicit bias of its Officers." Defs.' Mot. 17, ECF No. 14. These allegations, however, are directly relevant to Perez's Section 1983 claims. Indeed, "[m]unicipal supervisors may be liable for the failure to train, supervise, or discipline its employees." *Anderson v. City of Phila.*, No. 16-5717, 2017 WL 550587, at *4 (E.D. Pa. Feb. 10, 2017) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). To establish such a claim, a plaintiff must "identify specific training or policies that would prevent the harm." *Id.* (citing *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 325 (3d Cir. 2005)). Perez's allegations fit this description, so they will not be stricken from the complaint.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion is granted in part and denied in part. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge